UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JAMES MORGAN,

        Plaintiff,

v.

GOERGE JOHNSON, *et al.*,

        Defendants.
_____/

Case No. 1:17-cv-206

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on motions for summary judgment filed by defendants George Johnson, Andrea Lindhout and Keith Papendick (ECF No. 47), defendants S. Aiken and R. Harbaugh (ECF No. 48), and plaintiff (ECF No. 54).

    **I.**    **Background**

This action involves incidents which occurred at the Bellamy Creek Correctional Facility (IBC). Plaintiff's complaint named the following defendants: PA George [named as "Goerge"] Johnson (primary care physician); Sue Buskirk (housing unit manager); RN S. Aiken; Dr. Keith Papendick; RN Andrea Lindhout [named as "Lindout"]; Dr. Lyle Mindlin; RN R. Harbaugh; and Richard Russell (Manager, Grievance Section Office of Legal Affairs). Compl. (ECF No. 1, PageID.2-3).[1]

---

[1] Defendant Dr. Mindlin executed a waiver of service on May 30, 2017. He is not represented by counsel and has filed nothing in this lawsuit. He was a radiologist at the MDOC's Duane Waters Hospital (ECF No. 31-1, PageID.183-184). He did not treat plaintiff. His only connection with plaintiff is that he interpreted an ultrasound of plaintiff's left upper arm on May 1, 2015 and identified an "[a]pparent biceps rupture." *Id*. at PageID.184.

1

Plaintiff's complaint stated the following claim (in his words):

> In the beging [sic] days of May 2015 I tore my bicep tendon and ligaments in an accident. This was confirmed by several doctors and technicians wich my medical documents state clearly. Due to lack of treatment, mainly a surgery to repare damages that will not heal otherwise my arm is in constant pain, lack of mobility, and little strength. This has affected everyday duties and caused mental distress. Each defendant has spoke directly with me or has reviewed my medicl records. S. Aiken is a nurse that addressed my arm. Andrea lindout is R.N. that also saw me for injury. George Johnson is the doctor that saw me for injury. Sue Buskirk spoke with me about my descrepince with medical service. Lyle Mindlin was my ultra sound Doctor for arm. Keith Papendick was my orthopedic doctor for arm. R. Harbaugh is my RN that reviewed case a Bureau of Health Care Service. Richard Russell managed legal affairs for my Grievance on Health Care. None of these people did due diligents or attempted to Help aide me/due job to the fullest.

Compl. at PageID.4. For his relief, plaintiff asked the Court to order a procedure to fix his "deformed and useless arm" and compensation "for pain and suffering, mental destress, loss of wages, and poor living." *Id*. at PageID.5.

The Court dismissed defendants Buskirk and Russell on initial screening. Opinion (ECF No. 7). The Court construed the rest of the paragraph as stating a cause of action for deliberate indifference to a serious medical need in violation of plaintiff's Eighth Amendment rights and allowed the claim to proceed against the remaining defendants. *Id*. The Court previously denied defendants Harbaugh and Aiken's motion for summary judgment for lack of exhaustion and defendants Johnson, Papendick, and Lindhout's motion to dismiss. *See* Order (ECF No. 41).

Finally, defendant Dr. Mindlin executed a waiver of service on May 30, 2017.[2] He is not represented by counsel and has filed nothing in this lawsuit. As discussed, *infra*, Dr. Mindlin

---

[2] Fed. R. Civ. P. 4(d)(3) provides in pertinent part that, "A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent . . ."

did not treat plaintiff at IBC. Dr. Mindlin was the radiologist at the MDOC's Duane Waters Hospital (DWHC) who interpreted plaintiff's left upper arm ultrasound on May 1, 2015 and identified the "[a]pparent biceps rupture" treated by plaintiff's medical providers at IBC. *See* Medical Records (MR) (ECF No. 31-1, PageID.183-184).

### III. The parties' motions for summary judgment

#### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.  Eighth Amendment claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction

4

of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

    **C.**    **Defendants' motions**

    **1.**    **Summary of plaintiff's documented treatment**

Plaintiff injured his left arm on or about Saturday, April 18, 2015. MR at PageID.180-181). On April 22, 2015, NP Andrea Lindhout saw plaintiff regarding this injury, diagnosed him with a suspected ruptured tendon in his bicep, prescribed Ultram for pain, and requested an ultrasound to confirm the diagnosis. *Id*; Lindhout Aff. (ECF No. 29-3, PageID.163). Keith Papendick, M.D. approved the request for an ultrasound that same day. MR at PageID.182-183. The ultrasound was completed on May 1, 2015. Dr. Mindlin, a radiologist at the DWHC, interpreted the ultrasound and identified an "[a]pparent biceps rupture with a generous effusion in the antecubital fossa." *Id*. at PageID.183-184.

On May 5, 2015, NP Lindhout saw plaintiff, explained his ultrasound results, continued his medication, ordered a general lay-in for him, and requested an orthopedic consult. *Id*. at PageID.185-188.  Dr. Papendick denied the request for an orthopedic consult with an alternative treatment plan, recommending conservative treatment per "up to date" guidelines. *Id*. at PageID.187-188.

On May 7, 2015, PA George Johnson saw plaintiff and explained the conservative treatment plan to immobilize his arm with a splint and sling for two months.  *Id*. at PageID.189-190.  However, plaintiff disagreed with the treatment plan and refused the splint.  *Id*. On May 11, 2015, non-party Regional Medical Director Steven Bergman, D.O. performed a chart review and concurred with the plan to continue conservative treatment for six to eight weeks and then reevaluate. *Id*. at PageID.191-192.  On May 14, 2015, PA Johnson talked to plaintiff about using a splint, but plaintiff, for the second time, refused to use the splint as recommended.  *Id*. at PageID.193-194. On May 21, 2015, NP Lindhout reassessed plaintiff's biceps. *Id*. at PageID.195-196.  Plaintiff reported moderate pain.  *Id*.  She noted that while plaintiff had normal range of motion, he had decreased strength, and continued his medications.  *Id*.

NP Lindhout reassessed plaintiff's biceps on June 17, 2015, noting: that he was "doing well;" that his "strength is slowly improving;" and that plaintiff reported that "he still [can't] do much because it causes pain and bruising."  *Id*. at PageID.197. Lindhout "[d]iscussed taking it slow and will [with?] time we should continue to see improved strength."  *Id*.  They discussed medication and she discontinued Tegretol per plaintiff's request.  *Id*. at PageID.197-198.

On July 23, 2015, PA Johnson ordered a new medication for plaintiff (Naprosyn).  *Id*. at PageID.199.

On August 26, 2015, non-party RN Meredith J. Hamond documented that plaintiff returned his sling and reported that his arm felt "better, no pain, just weak." *Id.* at PageID.200. She instructed him to "gradually increase activity and strength." *Id.* On that same date, PA Johnson saw plaintiff and documented that his biceps tendon rupture was slowly improving. *Id.* at PageID.201-202.

On September 23, 2015, plaintiff complained to PA Johnson of "pain in lateral biceps tendon with light resistance." *Id.* at PageID.203. Johnson advised plaintiff that a deformity in the medial distal biceps tendon from the rupture will always be present. *Id.* at PageID.203. Johnson requested a physical therapy consult, which Dr. Papendick approved the next day. PageID.203-206.

On October 7, 2015, non-party Scott J. Weaver, P.T., performed a physical therapy assessment of plaintiff. At that time, P.T. Weaver: determined that plaintiff had "good" potential for rehabilitation; instructed plaintiff on exercises that he should perform to improve his left arm; and further instructed plaintiff to follow up with his medical provider if there was no improvement after eight weeks. *Id.* at PageID.207-208. On October 22, 2015, PA Johnson saw plaintiff regarding his physical therapy plan and pain medications. *Id.* at PageID.209-210. Johnson noted that plaintiff was on maximum pain medications. *Id.* at PageID.209.

About seven months later, on May 25, 2016, NP Lindhout saw plaintiff with respect to various medical conditions, including the biceps tendon rupture. *Id.* at PageID.211. Plaintiff reported that he was struggling to lift or hold things with his left arm after "10 second[s]". *Id.* Plaintiff reported that it was not a "strength issue" but a "holdin[g] on to items issue." *Id.* Lindhout discussed continuing to use his arm, following his exercise program, and continuing to use medications as needed. *Id.* at PageID.211-212.

Some months later, on September 7, 2016, NP Lindhout prescribed plaintiff Naprosyn to purchase from the store so that he would have some medication when his prescription expired. *Id*. at PageID.213.

Plaintiff transferred to a different MDOC facility on October 27, 2016. After that date, none of the Corizon defendants in this action, Dr. Papendick, NP Lindhout, or PA Johnson, had any involvement with plaintiff regarding his left arm problems. *Id*. at PageID.214-215.

### 2. Dr. Papendick, NP Lindhout and PA Johnson

Defendants Dr. Papendick, NP Lindhout and PA Johnson contend that plaintiff's constitutional claim is without merit, pointing out that they provided proper treatment to plaintiff by promptly diagnosing his biceps tendon rupture, immobilizing his arm with a sling (because plaintiff refused the recommended splint), providing various combinations of pain medication, and providing a physical therapy consultation. Plaintiff's motion for summary judgment is not directed at any particular defendant. In his motion, plaintiff asserts that the State "failed to complete and did not act on medical recommendations" which have left plaintiff with a deformed arm, which is painful, weak, affects his daily activities, and has resulted in mental illness. Plaintiff's Motion (ECF No. 54, PageID.297-298).

Based on this record, defendants' actions did not constitute deliberate indifference to a serious medical need. The medical record reflects that defendants Dr. Papendick, NP Lindhout and PA Johnson provided prompt and continuous medical treatment to plaintiff. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). Plaintiff has presented no

8

evidence to support his claims that defendants Dr. Papendick, NP Lindhout and PA Johnson were deliberately indifferent to his serious medical needs. Rather, plaintiff simply states that he has a "[s]erious medical need that is so obvious that even a lay person would easily recognize this necessity for doctors [sic] attention." *Id*. at PageID.298. While plaintiff apparently disagrees with defendants' medical judgment regarding the treatment of his arm injury, this disagreement does not rise to the level of a federal constitutional claim. As discussed, plaintiff disagreed with the conservative treatment recommended by the medical providers. and refused to follow their recommendation to use a splint in May 2015. "A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003). For these reasons, defendants Dr. Papendick, NP Lindhout, and PA Johnson's motion for summary judgment should be granted, and plaintiff's motion for summary judgment against these three defendants should be denied.

        **3.**     **RN Subrina Aiken and RN Richard Harbaugh**

In his complaint, plaintiff alleged that RN Subrina Aiken "is a nurse that addressed my arm." Compl. at PageID.4. Neither party has presented evidence that RN Aiken treated plaintiff. This is not surprising, because RN Aiken is a Clinical Administrative Assistant (CAA) at the MDOC and does not provide any direct care to prisoners. Aiken Aff. (ECF No. 49-2, PageID.282) (stating in part "I did not provide any medical care to the inmate"). RN Aiken's only involvement in this matter is that she responded to a Step II grievance filed by plaintiff. *Id*. at PageID.283. RN Richard Harbaugh is also a CAA who does not provide direct patient care to prisoners. Harbaugh Aff. (ECF No. 51-1, PageID.288). One of his job responsibilities is to sign as the "Approver" to Health Care Step III grievance responses. *Id*. at PageID.289.

In their brief, defendants RN Aiken and RN Harbaugh point out that their involvement was limited to responding to plaintiff's Grievance IBC 2016-05-1277-12D3 ("1277"). *See* Defendants' Brief (ECF No. 49, PageID.278). RN Aiken responded to plaintiff's Step II appeal of the grievance and RN Harbaugh approved the Step III response. *Id*.; Grievance 1277 (ECF No. 23-3, PageID.113-115. Plaintiff has failed to state a claim against these two defendants. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). For these reasons, defendants RN Aiken and RN Harbaugh's motion for summary judgment should be granted, and plaintiff's motion for summary judgment against these two defendants should be denied.

### IV.     Dr. Mindlin

As discussed, Dr. Mindlin executed a waiver of service, but unlike the other defendants, he is not represented by counsel and he filed no motions or other documents in this matter. In addition, it appears that Dr. Mindlin was not served copies of any orders or other documents in this case because his address is not listed on the docket sheet. Discovery is closed and the dispositive motion deadline has passed. The issue for the Court is how to proceed with respect to plaintiff's claims alleged against Dr. Mindlin.

This Court's "Standard Case Management Order in a Prisoner Civil Rights Case" provides in pertinent part:

> By virtue of 42 U.S.C. § 1997e(g)(1), no defendant is required to file a response to the complaint. The only action required of any defendant is the filing of an appearance within the time allowed by the Court's order of service. No default will be entered against any defendant for exercising the right under section 1997e(g)(1) not to respond to the complaint. If, after the close of the dispositive motion period under paragraph 5 of this order, no response has been filed, the Court may direct the filing of an answer.

Order (ECF No. 15, PageID.46).

Here, because the dispositive motion deadline has passed and Dr. Mindlin has not filed a response to the complaint, the case management order states that the Court may direct the doctor to file an answer. The authority for this direction appears in 42 U.S.C. § 1997e(g)(2), which provides that "The court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits." As one Court observed, while § 1997e(g) appears to carve out an exception to the general rules of pleading, the statute provides little guidance on how that is accomplished:

> Congress created an exception to the standard rules of civil pleading outlined in the Federal Rules of Civil Procedure when it enacted the Prison Litigation Reform Act and subsequent amendments. In particular, 42 U.S.C. § 1997e(g)(1) allows a Defendant to "waive the right to reply to any action brought by a prisoner." *Id*. This waiver right is not absolute; section 1997e(g)(2) provides "The court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits." *Id*. Section 1997e(g)(1) requires a court to make such a finding before defaulting a defendant. *Id*. ("No relief shall be granted to the plaintiff unless a reply has been filed.")
>
> The statute does not define the phrase "reasonable opportunity to prevail on the merits," nor does it explain what a Court must do to communicate its finding that the plaintiff has a reasonable opportunity to prevail on the merits; for example, it is unclear whether a specific finding of reasonable opportunity must enter or whether this finding can be made implicitly through an order requiring a response. Similarly, the statute does not explain the relationship between section 1997e(g)(2) and the frivolous review procedures outlined in section 1997e(c). . .

*Aaron v. Dyer*, No. 15-CV-11014, 2016 WL 1698399 at *1 (E.D. Mich. April 28, 2016).

Upon reviewing the complaint, the Court concludes that no answer is required under 42 U.S.C. § 1997e(g)(2) for two reasons. First, plaintiff's claim against Dr. Mindlin should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides that the Court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relief may be granted. . . " In determining whether a complaint should be dismissed for failure to state a claim under § 1915(e)(2), the Court applies the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*, citing *Twombly*, 550 U.S. at 555.

On initial screening, while the Court found that "[p]laintiff's allegations are sketchy," it nevertheless allowed service of the complaint on Dr. Mindlin. The undersigned respectfully submits that plaintiff's allegation that "Lyle Mindlin was my ultra sound Doctor for arm," Compl. at PageID.4, does not set forth the basis for an Eighth Amendment claim against the doctor. Plaintiff simply identifies Dr. Mindlin as the doctor who interpreted the ultra sound. Accordingly, plaintiff's claim against Dr. Mindlin should be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

Second, assuming that 42 U.S.C. § 1997e(g)(2) applies independent of the screening requirements, the Court concludes that there is no basis for requiring Dr. Mindlin to file a reply to the complaint. Discovery is closed and the dispositive motions have been filed. Neither party has presented any evidence in support of their dispositive motions which demonstrate that plaintiff has "a reasonable opportunity to prevail on the merits" against Dr. Mindlin. As discussed, Dr. Mindlin's only involvement in this case was to interpret an ultra sound. Accordingly, Dr. Mindlin is not required to file a reply, *see* 42 U.S.C. § 1997e(g)(2), plaintiff cannot obtain relief without a reply, *see* 42 U.S.C. § 1997e(g)(1), and plaintiff's claim should be dismissed.

## V.     Recommendation

For these reasons, I respectfully recommend that defendants Johnson, Papendick, and Lindhout's motion for summary judgment (ECF No. 47) be **GRANTED**, that defendant Aiken and Harbaugh's motion for summary judgment (ECF No. 48) be **GRANTED**, and that plaintiff's motion for summary judgment (ECF No. 54) be **DENIED**.

I further recommend that defendant Mindlin be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. 28 U.S.C. § 1915(e)(2)(B) or, in the alternative, be **DISMISSED** for plaintiff's failure to demonstrate "a reasonable opportunity to prevail on the merits" pursuant to 42 U.S.C. § 1997e(g)(1)-(2).

I further recommend that this action be **TERMINATED**.


Dated:  February 26, 2019         /s/ Ray Kent
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).